## GILMORE v. BROWN et al.

(Court of Civil Appeals of Texas. San Antonio. Oct. 23, 1912. Rehearing Denied Nov. 20, 1912.)

1. TRUSTS (§ 373*)—RESULTING TRUST—CONTRACT—CONSTRUCTION—INSTRUCTIONS.

In an action by a church congregation to recover property alleged to belong to the church from the pastor, an instruction that if the cash consideration expressed in a certain deed was paid with money which belonged to the church, and it was understood between defendant and the church that the notes which defendant executed were to be paid by the church, and thereafter the balance of the purchase price was paid by the church or its members then the jury should find for plaintiff, was erroneous as permitting a recovery as to the consideration for which the notes were given, if it was agreed between defendant and the church that the notes were to be

paid by the latter, irrespective of the time when such agreement was made.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 604–606; Dec. Dig. § 373.*]

2. TRUSTS (§ 35*)—EXPRESS TRUSTS—AGREEMENT—TIME OF MAKING.

To entitle a person to claim title to real property under an express trust, an agreement creating the trust must exist at the time of acquisition of title by the alleged trustee; no agreement thereafter made being available for that purpose.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 45–50; Dec. Dig. § 35.*]

3. TRIAL (§ 373*) — MISLEADING INSTRUCTIONS.

In a suit to enforce a resulting trust of certain church property against the pastor, the court charged that if the cash consideration paid for the property was money belonging to the church, and it was understood that notes executed by the pastor were to be paid by the church and were subsequently paid by it, then plaintiff was entitled to recover. The court further charged that if the cash consideration was paid with moneys belonging to defendant, and it was understood at the time the property was purchased that the notes for the deferred payments were to be defendant's personal obligations, then the jury should find for defendant. Held, that the second instruction, when construed with the first, was misleading, in that it was liable to confuse the jury with reference to the burden of proof with respect to the ownership of the money paid for the property.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 883; Dec. Dig. § 373.*]

4. TRUSTS (§ 90*)—RESULTING TRUST—QUESTION FOR JURY.

In a suit to enforce a resulting trust of certain church property as against the pastor, evidence *held* sufficient to justify the submission of the case to the jury.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 138; Dec. Dig. § 90.*]

5. TRIAL (§ 237*) — INSTRUCTIONS — FACTS—BURDEN OF PROOF.

A request to charge requiring certain facts to be found by the jury by "clear and satisfactory" evidence was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 542, 548–551; Dec. Dig. § 237.*]

6. TRUSTS (§ 66*)—RESULTING TRUST—PURCHASE OF REAL PROPERTY.

Where the pastor of a church desiring to purchase certain real property was vested with power to act, it being anticipated that a cash purchase was not contemplated, and he purchased in his own name, paying a part of the consideration in cash and giving his personal notes for the balance, the fact that his agreement with the trustees did not cover the details of the transaction and that he made himself personally liable on the notes would not destroy his relation as trustee, since, should he be required to pay the notes, he would be subrogated to the vendor's lien pro tanto to secure repayment of the amount due him by the church.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 94; Dec. Dig. § 66.*]

7. TRUSTS (§ 70*)—RESULTING TRUST—PURCHASE OF PROPERTY FOR ANOTHER.

Where the funds of another are invested in land, a trust is created, regardless of the intention of the purchaser to buy for himself.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 95–97; Dec. Dig. § 70.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**8. TRIAL (§ 373*)—MISLEADING CHARGES.**

In a suit against the pastor of a church to enforce a resulting trust of certain church property, defendant requested an instruction that if he, with intent to buy the property for himself, used funds which had been placed in his hands as pastor of the church, and at that time the church was indebted to him for salary, and he used the funds with intention of crediting the amount on the debt due him for salary, then the jury should find for him no matter how the remainder of the consideration was paid. A similar instruction was also requested, providing that if in paying the cash consideration he used funds turned over to him which were collected from members of the church for church purposes, and the church was indebted to him in a sum equal to or greater than the amount so used by him in making the purchase, and it was his intention to take the property for himself, and not for the church, then to find for defendant. *Held*, that such instructions were properly refused, as misleading the jury to believe that the pastor might appropriate funds turned over to him for the specific purpose of buying property to the payment of his salary.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 883; Dec. Dig. § 373.*]

**9. TRUSTS (§ 84*)—RESULTING TRUST—MONEY OF ANOTHER.**

Where the pastor of a church bought certain property in controversy with money of the church placed in his hands for that specific purpose, he could not prevent becoming a trustee for the church by intending to credit or crediting the fund so used on the indebtedness of the church to him for salary.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 125–127; Dec. Dig. § 84.*]

**10. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.**

Where, in a suit against the pastor of a church to enforce a resulting trust as to certain church property, there was evidence of an express agreement on his part to purchase for the church, requests to charge that defendant could only become a trustee to the extent that he may have used funds placed in his hands by the church for the purpose of making a cash payment were properly refused as on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

**11. TRIAL (§§ 240, 244*)—INSTRUCTIONS—REQUESTS TO CHARGE.**

Where requests to charge were argumentative and also singled out certain evidence and instructed as to the legal effect thereof, they were properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 561, 577–581; Dec. Dig. §§ 240, 244.*]

**12. APPEAL AND ERROR (§ 701*)—BILL OF EXCEPTIONS—CONTENTS.**

An assignment to the overruling of a request to charge that certain evidence could not be considered as binding on defendant could not be reviewed where the statement of facts did not show what evidence was objected to, and sought to be eliminated.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2933–2935; Dec. Dig. § 701.*]

**13. APPEAL AND ERROR (§ 1050*)—REVIEW OF EVIDENCE—PREJUDICE.**

Where, in a suit against the pastor of a church to enforce a resulting trust as to certain real property, D. had testified that defendant had asked him to make a speech to the church congregation to get them to pay up rapidly for the property, defendant was not prejudiced by the admission of other evidence of a member of the congregation that defendant brought D. from whom the property was purchased, and that he (defendant) thought by bringing D. it would stir up the minds of the members, and they would pay up rapidly for the property.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

**14. APPEAL AND ERROR (§ 216*)—REQUEST TO CHARGE—DUTY TO MAKE REQUEST.**

The failure of the trial court to submit an issue to the jury is not error of which defendant can complain; he having failed to offer a special charge covering the matter.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. §§ 627, 628, 629, 630–641, 660, 662–676.]

**15. WITNESSES (§ 275*)—CREDIBILITY—MISCONDUCT—MATERIALITY.**

In an action against the pastor of a church to enforce an alleged resulting trust as to certain property alleged to belong to the church, evidence with reference to defendant's relations with a woman and his marriage to another woman was inadmissible.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 924, 926, 967–975; Dec. Dig. § 275.*]

Error from District Court, Dallas County; J. C. Roberts, Judge.

Suit by L. L. Brown and others against J. G. Gilmore. Judgment for complainants, and defendant brings error. Reversed and remanded.

E. G. Senter, of Dallas, for plaintiff in error. M. W. Townsend, of Dallas, for defendants in error.

MOURSUND, J. The defendants in error were plaintiffs below, and, as members of the Mt. Rose Baptist Church, a negro church organization, sued plaintiff in error, Gilmore, who was the founder of the church, and had been its pastor from its organization. The object of the suit was to divest said Gilmore of the title to a certain lot at the corner of Sutton and Crowdus streets, Dallas, Tex., and vest the same in said Mt. Rose Baptist Church and in certain persons named as its trustees. Plaintiffs alleged that the property was conveyed to Gilmore on April 12, 1903, by Chas. L. Snider for $150 cash and 14 notes for $50 each executed by Gilmore to Snider; that Gilmore, by direction of the church, purchased the property for the church, but, for convenience or other reasons, caused the deed to be executed to himself; that the church furnished the money to pay all the cash consideration, and subsequent to the execution of the deed paid off all the deferred payments out of its own funds, and that none of the money paid for said property was paid by Gilmore; that the deed was in fact executed for the purpose of conveying the property to the church, and they further alleged that Gilmore attempted to sell the property and thereby repudiated the trust.

Gilmore filed plea in abatement, general de-

nial, special plea that the church owed him salary in the aggregate sum of $4,161, the amount unpaid for each year being specifically set out, and further alleged that all amounts coming into his hands as pastor were applied by him on his salary; that if any agreement existed between him and the church with respect to the property in controversy, which was denied, it was merely an understanding that he would convey the property to the church when the church paid him the amount of purchase money paid by him for the property, with interest, alleged to be about $1,750, together with all unpaid salary; that for said sums he holds an equitable lien upon said property, if it be held that he is not the owner in fee simple. He prayed that he have judgment removing the cloud from his title, cast thereon by plaintiffs' claims, for writ of possession and restitution, and that, if judgment should be in favor of plaintiffs for the property, then that he have judgment for the sums due him, with a recital that the same are a lien upon the property and foreclosing said lien.

Plaintiffs demurred to the answer, excepted to defendant's claim for unpaid salary because the church was an unincorporated religious society, and because it presents an independent cause of action which cannot be set up as an offset, and is a misjoinder of causes and because the answer shows that all liens thereof are barred by limitation, and, further, that no sufficient facts are shown to establish the alleged liability. Plaintiffs also filed general denial and special denial of the alleged agreement to pay salary.

The defendant's demurrer and special exceptions were overruled. Verdict was returned by the jury in favor of plaintiffs, and judgment rendered divesting defendant of the title to the property in controversy, and vesting such title in certain persons named in the judgment as trustees of the Mt. Rose Baptist Church. Defendant appealed.

[1] The first assignment of error is based upon the following portion of the court's charge, viz.: "If you find and believe from the evidence that the cash consideration of $150, as expressed in the deed, was paid with money that belonged to the said Mt. Rose Baptist Church, and that it was understood and agreed between the said Gilmore and the said church that the notes which the said Gilmore executed were to be paid by said church, and you further find and believe from the evidence that subsequent thereto the balance of the purchase money was paid by said church, or the members thereof, then you should find your verdict for the plaintiffs for the land in controversy." We think the charge is erroneous, in that it permits a recovery by plaintiffs as to the consideration for which notes were given if it was agreed between Gilmore and the church that said notes were to be paid by the church, irrespective of the time when such agreement was made. The portion of the charge relating to the cash paid is evidently based upon the theory of a resulting trust, while the portion relating to the purchase-money notes is apparently based upon the theory of an express trust.

[2] To entitle a person to claim title under an express trust, an agreement creating said trust must exist at the time of the acquisition of title by the person who is sought to be held as a trustee, and no agreement made afterwards can create the trust. Allen v. Allen, 101 Tex. 362, 107 S. W. 528.

The second assignment of error complains of the following portion of the court's charge: "If you find and believe from the evidence that the $150 cash consideration expressed in the deed was paid by moneys that belonged to the defendant Gilmore, and that it was the understanding at the time said land was purchased that the notes executed for the deferred payments were to be the personal obligations of the defendant Gilmore, then you will find your verdict for the defendant for the land in controversy."

[3] Plaintiff in error contends that this charge, taken in connection with the portion complained of in the first assignment (which together constituted the entire charge except the clause relating to burden of proof, which followed the portion now considered), was calculated to impress the jury with the idea that, unless defendant had paid for the church with his funds, plaintiffs should recover, without regard to any agreement prior to the purchase that defendant should purchase for the church. As an affirmative presentation of defendant's principal contention, the charge is not erroneous, but, when we consider the entire charge given, we conclude that the same was apt to confuse the jury in regard to the burden of proof with respect to the ownership of the money paid for the property. By following the rule approved in Baylor v. Hopf, 81 Tex. 641, 17 S. W. 230, the court can instruct the jury in such manner that they will clearly understand what plaintiffs must establish in order to recover, and, then should defendant desire an affirmative presentation of his defense, the same can be given.

The third assignment is in violation of rule 25, and will not be considered.

[4] The fourth assignment is based upon the court's refusal to give a peremptory charge to find for defendant. We think the evidence was sufficient to go to the jury, and the assignment is overruled.

[5] The fifth, sixth, eighth, and twenty-sixth assignments are based upon the refusal of the court to give certain special charges requested by defendant, all of which were properly refused because they required certain facts to be found by the jury by "clear and satisfactory" evidence. Mitchell v. Mitchell, 80 Tex. 113, 15 S. W. 705; Irvin v. Johnson, 44 Tex. Civ. App. 436, 98

S. W. 405; Smalley v. Paine, 130 S. W. 742; Stubblefield v. Stubblefield, 45 S. W. 965; Baylor v. Hopf, 81 Tex. 637, 17 S. W. 230.

[6] The seventh assignment is based upon the refusal of a special charge which in substance laid down the rule that, if there was an understanding between defendant and the members of the church prior to the purchase that he would purchase the property for the church, but no agreement as to terms and conditions under which the purchase would be made, and that thereafter defendant bought the property, and had the title made to himself and gave his individual notes for part of the purchase money without consulting anybody representing the church congregation, and without any authority so to execute said notes on behalf of the church congregation, and with the understanding between himself and the purchaser that he was thereby binding himself to pay the notes, then that defendant did not become a trustee for the church as to the consideration represented by the notes. In this case the evidence is undisputed that no cash purchase was contemplated by the members of the church. If an agreement was made by which defendant agreed to purchase the property for the church, and he was vested with power to act in the matter, the mere fact that such agreement did not cover the details of the transaction would not prevent the creation of the relation of trustee. It is true that by signing the notes he made himself personally liable for their payment, yet such fact would not destroy the relation of trustee, and a trustee should not be permitted to avoid his responsibility as such by asserting that he closed a trade without having the details thereof ratified in advance by the cestui que trust. Should he be required to pay the notes, he would be subrogated to the vendor's lien pro tanto to secure the repayment of the amount due him by the beneficiary.

[7] The ninth assignment is overruled. Where the funds of another are invested in land, a trust is created, regardless of the intention in the mind of the purchaser to buy for himself. Pearce v. Dyess, 101 S. W. 552.

[8] The tenth and eleventh assignments of error are based upon the court's refusal of special charges Nos. 9 and 10. Both charges are misleading. No. 9 provides that if defendant, with intent to buy the property for himself, used "funds which had been placed in his hands as pastor of the Mt. Rose Baptist Church," and at that time said church was indebted to him for salary, and he used such fund with the intention of crediting the amount on the debt due him for salary, then to find for defendant, no matter how the remainder of the consideration was paid. The other charge is somewhat similar, as it provides in paying the cash consideration if he used funds "turned over to him which were collected from members of the church for church purposes," and the church was indebted to him in a sum equal to or greater than the amount so used by him in making said purchase, and it was his intention to take the property for himself, and not for the church congregation as such, then to find for defendant. Neither charge refers to funds turned over to him for the specific purpose of buying the property, yet the way both are drawn the jury might infer that he could credit such a fund on any indebtedness due him.

[9] The intention with which he bought is immaterial, and, if he actually bought the property with money of the church placed in his hands for that specific purpose, he could not prevent becoming the trustee for the church by intending to credit or crediting the fund so used on his indebtedness for salary. The assignments are overruled.

[10] The twelfth and thirteenth assignments also complain of the refusal of the court to submit special charges. Special charge No. 11 is upon the weight of the evidence in instructing that defendant could only become trustee to the extent that he may have used funds placed in his hands for the purpose of making the cash payment. Both special charges leave out the element of an express agreement to purchase for the church. Both charges are evidently based upon the theory of a resulting trust, and do not take into consideration the theory of express trust urged by plaintiffs. If purchase was made in pursuance of an agreement creating an express trust, defendant certainly cannot claim any title by reason of paying purchase money notes with funds he has applied to the payment of salary due him. The assignments are overruled.

Assignments Nos. 14, 15, 16, and 25 are overruled, for the reasons given in discussing assignments Nos. 12 and 13.

[11] Assignments Nos. 18, 19, 21, and 22, based upon the refusal of special charges, are overruled because each of said charges singles out certain evidence and instructs as to the legal effect of such evidence, which is calculated to mislead the jury. Besides, the charges are argumentative. Parlin & Orendorff Co. v. Glover & Crews, 55 Tex. Civ. App. 115, 118 S. W. 731; Mitchell v. Mitchell, 80 Tex. 101, 15 S. W. 705; Panhandle Nat. Bk. v. Emery, 78 Tex. 499, 15 S. W. 23; G., H. & S. A. Ry. Co, v. Kutac, 76 Tex. 473, 13 S. W. 327; Dupree & McCutchan v. T. P. Ry. Co., 96 S. W. 647.

Assignments Nos. 17, 20, and 23 are overruled, because the special charges offered were clearly upon the weight of the evidence.

[12] The twenty-fourth assignment is based upon the refusal of the court to give special charge No. 23 to the effect that the opinion and understanding of Snider's agent in making the sale to Gilmore as to the purposes for which the property was to be bought, and that it was to become the prop-

erty of the church is not to be considered as evidence that defendant took the property as trustee, and is not binding upon defendant. We are not apprised by the statement what evidence is objected to and in effect sought to be eliminated by this charge. We find that on cross-examination of the witness by appellant's counsel he stated: "We didn't understand that Gilmore was speaking for himself and by himself. He didn't represent that he was speaking for himself." Plaintiff in error has not shown himself entitled to the charge, and the assignment is overruled.

The twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-third, thirty-fourth, thirty-fifth, thirty-seventh, thirty-eighth, thirty-ninth, fortieth, forty-first, and forty-second assignments are overruled, because we think the evidence objected to was admissible.

[13] The · thirty-sixth assignment complains of the admission of the testimony of Annie Johnson, as follows: "That Mr. Dabney came up there one Sunday night to make conference and made a speech to the congregation; that Gilmore brought him out there and introduced him to us; that he was the one that we was buying from; that he had brought this man out there so we could see who we were buying the property from; and that he thought by bringing him it would stir up the minds of the members, and they would pay up rapidly for the property." The latter portion of this testimony is the conclusion and opinion of the witness, and should have been excluded, but we consider the evidence harmless in view of the testimony of Dabney showing that the defendant Gilmore had asked him to make the speech with the idea and for the purpose stated by the witness Johnson.

The forty-third, forty-fourth, forty-fifth, forty-sixth, forty-ninth, fiftieth, and fifty-first assignments are based upon the action of the court in overruling defendant's · motion for a new trial; the contention being that the evidence is insufficient. These assignments are all overruled, but, in view of another trial, it would not be proper to discuss the evidence.

Assignments 47 and 48 are also based upon the court's failure to grant a new trial.

The forty-seventh is really an attack upon the judgment, because it fails to give Gilmore a recovery of the salary claimed by him and an equitable lien on the property in controversy to secure the payment of such salary.

The forty-eighth is a complaint because the issue of salary due Gilmore and equitable lien to secure same was not submitted to the jury.

[14] The record shows no action taken by the court with reference to plaintiffs' exceptions to defendant's cross-action for salary; and the questions whether the plaintiffs are liable for salary and to what extent, and whether such cross-action can be set up in this suit, are not before us for determination. If, under the rulings of the lower court, the issue was left in the case, the failure to submit it was a mere omission of which defendant could not take advantage, having failed to offer a special charge covering the matter. For this reason the assignments are both overruled.

[15] The fifty-second assignment of error raises the issue that a new trial should have been granted because of the testimony permitted to be elicited on cross-examination of defendant in regard to his relations with the woman, Angeline, and because of the argument along that line made to the jury by plaintiffs' attorney. Defendant's attorney excepted to the argument, but submitted no special charge to disregard the same, so no reversible error is presented so far as the argument is concerned. We think, however, the court erred in permitting the introduction of the evidence stated in the bill of exceptions. The evidence in regard to defendant's conduct towards Angeline, and his marriage to another woman, was irrelevant and highly prejudicial. We therefore sustain the assignment.

Assignments Nos. 53, 54, and 55 will not be considered because not briefed in accordance with rule No. 31.

For the errors pointed out, the judgment will be reversed and the cause remanded for a new trial.

Reversed and remanded.