BONNER *v.* CROSS COUNTY RICE COMPANY.

Opinion delivered May 4, 1914.

TRUSTS—TITLE TAKEN IN NAME OF ONE PARTY—JOINT OWNERSHIP.—Where title to property is taken in the name of one party to a contract, whereby it was agreed that the property was to be disposed of under the joint direction of all the parties to the contract; *held*, all the parties to the agreement had a joint interest in the property, and the holder of the legal title held the same subject to a trust in favor of the other parties, and could not dispose of the same without their consent, according to the terms of the agreement.

Appeal from Cross Chancery Court; *Edward D. Robertson*, Chancellor; reversed.

STATEMENT BY THE COURT.

The Cross County Rice Company instituted this action in the chancery court under sections 649-660, inclusive, of Kirby's Digest, to confirm its title to certain lands in Cross County. A. W. Bonner and the assignee of C. L. Sharp were made parties defendant. The complaint alleges that the plaintiff claims title to the lands described in the complaint by virtue of a deed from F. D. Rolfe and wife. The deed is made an exhibit to the complaint, and the consideration therein recited is the sum of one dollar. The complaint further alleges that plaintiff is advised that the defendant, A. W. Bonner, and the assignee of C. L. Sharp set up some claim or interest in said land, or the profits on a sale of the same, under a contract made between S. D. Johnson, C. L. Sharp and A. W. Bonner. The contract is made an exhibit to the complaint, and is as follows:

"This agreement made and entered into by and between S. D. Johnson and A. W. Bonner, both of Lee County, Arkansas, and C. L. Sharp of Cross County, witnesseth, that the said parties have all been engaged in securing the purchase of certain tracts of land in Cross County, Ark., the same being paid for and owned by the said S. D. Johnson and the deeds made to him as shown by the records of Cross County, Ark., but with the understanding that said lands are to be handled and dis-

posed of in any way agreed upon between the parties hereto, and the net profits are to be divided equally between the said parties, the profits shall be construed as being the difference between the purchase price and sale price of said lands after deducting interest on the purchase price at the rate of 6 per cent per annum, from date of purchase to the date of sale, together with any taxes that may have been paid thereon.

"It is understood that this agreement applies to all lands now deeded to said S. D. Johnson in Cross County, Ark., and any other after-acquired lands in which the other two parties hereto were interested in securing the purchase, and the same was accepted by the said S. D. Johnson as satisfactory to him. It is also understood that each is to bear one-third of the expense incident to the purchase and sale of any lands under this agreement.

"In testimony whereof all the parties hereto have signed their names on this the 16th day of March, 1909.

"S. D. Johnson,
"A. W. Bonner,
"C. L. Sharp."

The instrument was duly acknowledged and filed for record. The complaint further alleges that all of said lands were, after due advertisement and notice, sold at public auction at the courthouse in the city of Wynne, to the highest bidder, for cash, and subject to a mortgage due to the Hartford Life Insurance Company, and that at said sale F. D. Rolfe became the purchaser, he being the highest bidder therefor; that as such purchaser he received a deed from the said Johnson and assumed to pay the mortgage to the Hartford Life Insurance Company; that he afterward conveyed said lands to the plaintiff, which assumed to pay said mortgage debt; that said C. L. Sharp and his assignee and A. W. Bonner were duly apprised and notified of the time, day and terms of said sale, and that after the same was made, each of said parties was tendered the amount due to him under the terms of the contract above referred to. The prayer of the complaint is that said Bonner and Sharp and his as-

signee be summoned as defendants in the cause; that the contract between Johnson, Sharp and Bonner, above referred to and set out, be cancelled as a cloud upon the title of the plaintiff, and that the title of the plaintiff to said lands be quieted and confirmed. Bonner filed an answer and cross-complaint. In his answer he admits the execution of the contract exhibited to the plaintiff's complaint, but denies that the lands purchased under said contract were ever advertised and sold at public auction in the city of Wynne to the highest bidder. He denies that F. D. Rolfe became the purchaser of said lands at public sale as the highest bidder thereof. He denies that he was ever notified of the time and terms of said alleged sale. In his cross-complaint he alleges that the lands set out in the plaintiff's complaint were purchased under the contract above referred to between Johnson, Sharp and himself. He alleges that said lands were purchased for the average price of not more than eight dollars per acre; that said lands have enhanced in value until the same are now worth the sum of thirty dollars per acre; that after said lands had enhanced in value the defendant, together with Johnson and Sharp, were at different times offered sums for said land that would have netted them a large profit, which said Johnson and Sharp refused to accept; that after said lands had enhanced in value, as aforesaid, the said Johnson and other persons agreed to form a corporation to take over said lands at a sum equal to the actual cost price, together with the interest; that pursuant to said fraudulent design, the said Johnson, without notice in any manner to this defendant and cross complainant, on the 11th day of July, 1912, executed to said F. D. Rolfe a quitclaim deed to the lands in controversy for a nominal consideration of one dollar; that the said Johnson, Rolfe and other members, who are stockholders of plaintiff corporation, were fully acquainted with, and had full knowledge of, the contract between this defendant and cross-complainant and the said Johnson; that nothing of value ever passed between them, the said Johnson and Rolfe, for said lands. The

prayer of the cross-complaint is that the lands be sold under an order of the court for a division of the proceeds under the terms of said contract, and that the defendant have judgment against S. D. Johnson for one-third of the value of said lands after deducting therefrom the cost price, together with taxes and interest, and that said judgment be declared a lien upon the land.

The chancellor sustained a demurrer to the answer and cross complaint of Bonner, and the same were dismissed for want of equity. The court then rendered a decree cancelling the written contract between Johnson, Bonner and Sharp, so far as it affected the plaintiff's title to the lands in controversy, and decreed that it be removed as a cloud upon the title of the plaintiff, and that the title to all the lands involved in this action be confirmed and quieted in the plaintiff.

*S. Brundidge,* for appellant.

1. The demurrer should have been overruled. The answer showed an interest in the land. Kirby's Dig., § 650; 11 Barb. 471-3; 85 Fed. 492; 120 Ind. 239, 21 N. E. 1090; 134 U. S. 316; 63 N. W. 771; 67 Cal. 483; 6 N. W. 897; 71 Ark. 214; 100 *Id.* 488; 68 *Id.* 430; 2 Pom., Eq. Jur. (3 ed.), § 918; 110 Pac. 705; 101 N. E. 63; 8 Wall. (U. S.) 202.

*O. N. Killough* and *T. E. Lines,* for appellee.

The instrument vests no title in appellant. Pom., Eq. Jur. (3 ed.), § 992; 67 Fed. 879. The demurrer was properly sustained.

HART, J., (after stating the facts). Counsel for plaintiff seek to uphold the decree of the chancellor upon the authority of *McCulloch* v. *Chatfield,* 67 Fed. 877. In that case, McCulloch, Chatfield, Allen and others entered into a written contract for the purchase and sale of certain lands. Under the terms of the contract, the title to the land to be purchased was placed in Chatfield, and he was to have the full and absolute control of the land and of the sale thereof, being only required to account for the proceeds of sale. After the land was sold and

the expenses paid, the proceeds of sale were to be divided between the respective parties in proportion to the amounts they had paid in. The court held that the agreement contemplated that the trustee appointed in it should hold the title to such land as might be acquired under the agreement, dispose of the same to the best advantage possible, and convey the same when sold by his individual deed. The only limitation placed upon his powers was that he should not sell any of the land for less than one dollar per acre without the consent of all parties in interest. Under these circumstances, the court said that the trust created by the agreement plainly belonged to that class of trusts where the beneficiaries acquired no estate in lands held by the trustee until after they are sold, when their rights attach to the proceeds of sale; that under the terms of the agreement, the title to the land acquired was taken in the name of the trustee for the express purpose of enabling him to sell it without let or hindrance and to divide the proceeds among those who might become interested in the speculation. Therefore, the court held that McCulloch was not entitled to a decree adjudging that he was the owner of an undivided interest in the property, as a decree of that nature would very likely interfere with the dominion over the property which the trustee was entitled to exercise so long as he acted in good faith and was guilty of no dereliction of duty. It may be noted that there was no allegation that the trustee had acted fraudulently in that case. It was not even charged or proved that he had been either negligent or inefficient in the discharge of his duties.

It is true in the case at bar the defendant, Bonner, did not expend any money in the purchase of the land, but only contributed his time, labor, skill and judgment in the purchase thereof. Under the terms of the agreement, the titles were all to be taken in the name of Johnson, who advanced the money to pay for the land, but hereafter the facts in the case at bar are essentially different from those in the case of *McCulloch* v. *Chatfield, supra*. In that case the duties and responsibilities of McCulloch ended when the title was taken in the name

of Chatfield, and Chatfield had the absolute power to dispose of the lands in any manner, and for whatever price he saw fit, so long as he acted in good faith. Here the contract provided that the lands were to be disposed of under the joint direction of all the parties to the contract. This gave Bonner something more than a mere interest in the profits after the lands were sold; it gave him an interest in the lands themselves. Johnson held the legal title, but he could not convey the lands without the consent of Bonner. In the case of *Seymour* v. *Freer,* 8 Wall. (U. S.) 202, the court said:

"A trust is where there are rights, titles and interests in property distinct from the legal ownership. In such cases, the legal title, in the eye of the law, carries with it, to the holder, absolute dominion; but behind it lie beneficial rights and interests in the same property belonging to another. These rights, to the extent to which they exist, are a charge upon the property, and constitute an equity which a court of equity will protect and enforce whenever its aid for that purpose is properly invoked. Interests in real estate, purely contingent, may be made the subject of contract and equitable cognizance, as between the proper parties."

We think the principles there announced control the present case. The object of the trust here was the sale of the property, and the parties to the agreement were to agree upon the manner of its disposition. This gave the parties to the agreement a joint interest in the property. Johnson held the legal title, but the rights of Bonner are as valid in equity as those of Johnson are at law. Bonner, in his cross complaint, alleges that Johnson sold the property without his consent at a price very much less than they had been previously offered for the lands, and for a less price than the lands were worth when sold; that the plaintiff corporation was formed by persons for the express purpose of buying the lands at the same. price for which they were purchased under the agreement under consideration; that Johnson, Rolfe and the other incorporators had full knowledge of his rights and interest in the lands, and that said lands were purchased by

the corporation for the express purpose of defrauding him and of depriving him of his interest in the land. Under the allegations of his cross-complaint, the grantee took the title subject to the trust upon which Johnson held the property, and a court of equity will deal with it as if the title to the land still remained in Johnson. Therefore, we think the court erred in sustaining the demurrer to the defendant's answer and cross complaint, and for that error the decree will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.