## Central Trust Company of Owensboro, et al. v. Creel.

(Decided May 2, 1919.)

### Appeal from Muhlenberg Circuit Court.

1. Partnership—Joint Adventures—Contract—Construction.—A purchased and paid for a tract of land and entered into a contract. with B and C, by which the latter were to subdivide the property and bear the expense, and make sales of the lots at prices to be

agreed on by all the parties, and A was to execute deeds to those to whom these sales were made. After the payment of the expense of subdivision and of the purchase price and of other incidental expenses, the proceeds of the sales were to be equally divided among the parties, while the losses, if any, were to be borne in certain proportions: Held, that since the parties did not engage in a general business of a particular kind, but in a single transaction, the undertaking was not a technical partnership but a joint adventure.

2.' Joint Adventures—Contract—Construction.—Since under the above contract the activities of B and C were not confined to their services in selling the land, but they were to superintend its subdivision and bear the expense, and the sales were to be made under the joint direction of all the parties, B and C were more than mere agents and had an interest in the land as well as in the profits.

3. Venue—Parties—Jurisdiction.—Where under a joint adventure, plaintiff and defendants were joint owners of a tract of land, plaintiff had the right to bring an action for an accounting and for a sale of the land in the county where the land was located, and the service of process on certain defendants outside of the county was sufficient to bring them before the court.

4. Pleading—Joint Adventures—Accounting—Petition—Sufficiency. —In an action by one of the parties to a joint adventure against the others for an accounting and a sale of certain real estate, on the ground that one of the defendants declined to carry out the contract, a petition which alleged that plaintiff had made certain sales at advantageous prices and that the defendant had refused to execute the sales was sufficient allegation that the defendant had arbitrarily refused to carry out the contract.

5. Joint Adventures—Accounting—Sale of Real Estate.—Where a joint adventure for the purchase, subdivision and sale of real estate has been going on for seventeen years, and one of the parties has been dead for twelve years, and his executor refuses to execute sales at prices that are fair and reasonable, and the parties are unable to agree upon the prices at which the lots should be sold, the adventure may be terminated by a sale of the remaining lots and a division of the proceeds.

W. T. ELLIS for appellants.

E. A. TAYLOR and S. C. EAVES for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In the year 1901, C. L. Morehead purchased, for the sum of $1,600.00 cash, the surface of 200 acres of land near Central City, and entered into a written contract with B. F. Creel and M. P. Creel upon the following

terms: The Creels were to subdivide the property into small tracts and lay off the necessary streets and alleys; the lots were to be sold at private sale at prices to be agreed on by the Creels and Morehead; out of the first sales the expense of subdivision was to be paid to the Creels and the purchase price of the property was then to be paid to Morehead; after the payment of the taxes, etc., Morehead, B. F. Creel and M. P. Creel were each to receive one-third of the net proceeds; the Creels were to superintend the subdivision, sell all lots, attend to all the business connected therewith, free of charge; Morehead was to execute the deeds to th purchasers; after Morehead was paid the $1,600.00 and interest, any loss was to be borne equally by the parties to the contract; the contract was to continue until all the land was sold, and after all expense was paid the net proceeds were to be equally divided.

Morehead died in the year 1904, leaving a last will and testament, by which he devised his interest in the land in controversy to his nieces, Fanny Morgan and Clara M. Blocher, and appointed the Central Trust Company of Owensboro as executor. Prior to his death, a number of sales were made by the Creels and deeds therefor executed by Morehead to the purchasers. After his death, other sales were made and deeds executed by the executor.

Claiming that the transaction was a partnership, and that he and his brother had made several sales at advantageous prices which the Central Trust Company, as executor, had declined to carry into effect by executing the proper deeds, plaintiff, B. F. Creel, brought this suit in the Muhlenberg circuit court against the Central Trust Company as executor, Fannie Morgan and her husband, I. R. Morgan, Clara Blocher and her husband, John J. Blocher, and his brother, M. P. Creel, for a settlement of the partnership, a sale of the lots left unsold, and a division of the proceeds. The defendants, with the exception of M. P. Creel, were served with process in Daviess county, and questioned the jurisdiction of the Muhlenberg circuit court by both a special demurrer and a motion to quash the process, both of which were overruled. On final hearing the chancellor adjudged that plaintiff was entitled to the relief prayed for, and ordered the land sold and directed the proceeds to be equally divided among the parties to the contract, or

their representatives, after paying to the Central Trust Company the sum of $745.28, paid for taxes. The trust company appeals.

The solution of the several questions presented depends on the character of the transaction and the relation of the parties. It appears that Morehead purchased and paid for the land. The Creels agreed to subdivide the land and bear the expense. The Creels were to sell the land at prices to be agreed on by them and Morehead, and Morehead was to make the deeds. After the Creels were paid the expense of subdividing the land, and Morehead was paid the purchase price, and after the payment of other incidental expenses, the proceeds of the sale were to be equally divided between the parties and the losses were to be divided in certain proportions. Since the parties did not engage in a general business of a particular kind, but in a single transaction, i. e., the purchase and sale of a particular tract of land, it would seem that under the modern rule the undertaking was not a technical partnership but a joint adventure, which, though not identical with a partnership, is of a similar nature and is covered by the same rules of law. Marston v. Gould, 69 N. Y. 220; Green v. Higham, 161. Mo. 333, 61 S. W. 798, 23 Cyc. 453. It remains to determine whether the Creels have an interest in the profits only, or in the land itself. Had the activities of the Creels been confined to their services in selling the land, they would have had an interest in the profits only and not in the land. 15 R. C. L., sec. 6, p. 504; Smith v. Watson, 2 B. & C. 401, 9 E. C. L. 122; Scudder v. Budd, 52 N. J. Eq. 320, 26 Atl. 904; Moore v. Hunington, 7 Hun. (N. Y.) 425; Ross v. Willett, 76 Hun. 211, 27 N. Y. 785. Such is not the case, however. In addition to agreeing to sell the land, they agreed to superintend its subdivision and bear the expense. Not only so, but the sales were to be made under the joint direction of Morehead and the Creels. Under these circumstances the Creels were more than mere agents and had an interest in the land as well as in the profits. 15 R. C. L., sec. 6, p. 504; Irvine v. Campbell, 121 Minn. 192, 141 N. W. 109, Ann. Cases 1914c, 689; Bonner v. Cross County Rice Co., 113 Ark. 54, 167 S. W. 80.

Since the plaintiff and the defendants were joint owners of the land in controversy, plaintiff had the right to bring an action for an accounting and for a sale of

the land in the county where the land was located. Sub-sec. 2, sec. 62 and sec. 490 Civil Code. That being true, the service of process outside of the county on the de-fendants, other than M. P. Creel, was sufficient to bring them before the court.

But it is insisted not only that the petition was de-fective but that the facts were insufficient to authorize the relief granted by the chancellor. With respect to the first proposition it is argued that the petition should have alleged that plaintiff had made sales at reasonable prices, and that the defendant had arbitrarily refused to make deeds to the purchasers. While the petition did not in terms allege that the action of the trust company was arbitrary, or that the prices at which sales had been made were reasonable, it did allege that the sales were made at advantageous prices and that the trust company, for some reason unknown to plaintiff, refused to execute the sales. In our opinion these allegations were sufficient, for if the prices were advantageous and the trust com-pany declined to execute the sales, its action was arbi-trary. With respect to the second contention that the proof was insufficient to authorize the relief granted, we find the facts to be as follows: Though the trust company claims that it declined to execute only two deeds, which were to the Creels themselves, we think the weight of the evidence is to the effect that there were other deeds which it declined to execute. Indeed, that company seems to have deferred to Morehead's devisees, and to have been guided by their wishes in the matter. It fur-ther appears that the prices of the lots sold were all rea-sonable, but the executor and the devisees considered them too low. Indeed, it is clear from the record, consid-ered as a whole, that the executor and the Creels are un-able to agree upon the prices at which the remaining lots should be sold. Considering the fact that the trans-action has been going on for about seventeen years, that Mr. Morehead has been dead about twelve years, that the trust company has refused to execute sales at prices that were fair and reasonable, and that it seems impos-sible for it and the Creels to agree upon the prices at which the lots should be sold, we conclude that the equi-ties of the case demand that the joint adventure be termi-nated by a sale of the remaining lots and a division of the proceeds.

In distributing the proceeds, the chancellor will see that the trust company is reimbursed for any taxes paid by it and not covered by the original judgment.

Judgment affirmed.