**PYRON v. BROWNFIELD et al.  (No. 1867.)**

(Court of Civil Appeals of Texas.  Amarillo.
Feb. 15, 1922.)

1. **Joint adventures ⊛5(3)—Whether joint adventure existed in the purchase and sale of land held for the jury.**

In action to quiet title by one who had purchased land against another claiming an interest therein, whether the parties had engaged in a joint enterprise with the purpose of buying and reselling the land at a profit under an agreement to divide such profit equally *held* for the jury.

2. **Joint adventures ⊛4(1)—Trusts ⊛103(1)—Joint adventurer taking title to land holds it in trust.**

Where several persons entered into an agreement to buy and resell land and to divide the profits, and one furnished the money and the other knowledge of the land and services in resale, and the title was taken in the name of the one furnishing the money, he took the legal title in trust for the purpose of carrying out the enterprise, and the other had such an interest in the subject-matter that the one holding the title could not revoke the contract and put an end to his rights.

3. **Brokers ⊛9—One employed to sell land and share profits has no interest in land itself.**

One employed as a broker to sell land for a share of profits acquires no interest in the land itself, and has no rights after expiration of the contract.

4. **Evidence ⊛448—Surrounding circumstances considered to show nature of contract.**

Where a writing is consistent with the theory of either party to an action, its character and meaning may be determined from a consideration of the surrounding circumstances.

5. **Partnership ⊛5—Sharing of profits does not of itself determine relationship.**

An agreement to share in the profits of an enterprise or business does not of itself determine the question as to whether a partnership between the parties is thereby created, but all the other facts and circumstances are to be considered in connection with such agreement to ascertain whether the profits are to be received merely as compensation for services rendered as an agent, or as a principal interested in the business.

6. **Trusts ⊛20—May be ingrafted on legal title by writing at any time.**

A trust in land may be ingrafted on a legal title by a writing executed at any time.

7. **Joint adventures ⊛4(1)—Writing executed in pursuance of prior verbal negotiations held to be regarded as executed at time of original contract.**

Where purchase of land and agreement between purchaser and third party as to resale and division of profits were all part of the same transaction, a writing executed to evidence the agreement as to division of profits in pursuance of prior verbal negotiations should be regarded as being executed at the same time with the contract to purchase, though in point of time it was prepared and executed shortly afterwards.

8. **Limitation of actions ⊛39(5)—Right to reform instrument for mistake or fraud barred in four years.**

Right to reform an instrument so as to include agreements left out by mutual mistake, or fraud on the one part and mistake on the other, is barred by limitations after four years.

9. **Brokers ⊛10—Evidence ⊛445(6)—Written brokerage contract modified or revoked by oral agreement and parol evidence thereof is admissible.**

A written brokerage contract can be modified or revoked by a subsequent oral agreement, and where issue was whether contract was a brokerage contract or evidenced a joint adventure, evidence of an oral agreement made subsequent to the writing to the effect that the contract should terminate at the end of three years was admissible.

10. **Trial ⊛255(4)—One desiring consideration of evidence conditionally should request proper charge.**

Where evidence admitted was proper to be considered only in case the jury found a certain fact to be true, a party, desiring that it be considered only conditionally, should have requested the submission of a proper charge in connection therewith.

11. **Evidence ⊛218—Admissions of party held admissible.**

Where written instrument was consistent with theory of both parties, admissions made by one of the parties after the execution of the contract were admissible as to the character of the agreement.

12. **Evidence ⊛442(4)—Parol evidence admissible where writing tends to show that it was not intended to be full expression of agreement.**

Where a written brokerage contract and all the circumstances attending its execution tended to show that it was not intended to be a full expression of the agreement of the parties, parol evidence was admissible as to parts of the agreement not intended to be dealt with completely in the writing, and not contradictory to its terms.

Appeal from District Court, Gray County; W. R. Ewing, Judge.

Suit by M. V. Brownfield against R. B. Pyron and others. From an adverse judgment, the named defendant appeals. Reversed and remanded.

Veale & Lumpkin, of Amarillo, and Phillips, Trammell & Caldwell, of Fort Worth, for appellant.

Roscoe Wilson, of Lubbock, Frank Willis, of Canadian, and Underwood & Jackson, of Amarillo, for appellees.

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

BOYCE, J. M. V. Brownfield brought this suit against R. B. Pyron, in trespass to try title and to remove cloud from title to 5,944 acres of land in Gray county. He alleged that on January 28, 1909, he gave Pyron and Coke W. Harkrider, partners, the exclusive agency for a limited time to sell said land; that they had not sold it within the time limit, and the contract had been terminated thereby, and also by express revocation; that Pyron is claiming some interest in the land, and has caused to be placed of record a conveyance from Harkrider to him, purporting to convey an interest therein. The plaintiff also sought to reform a writing signed by him, dated January 29, 1909, which he alleged evidenced the enlistment contract. Pyron answered that the land was bought for the joint benefit of Brownfield, Pyron, and Harkrider, and title taken in the name of Brownfield, under agreement that the lands were to be resold and the profits divided, one-half to Brownfield and one-half to Pyron and Harkrider. That said land had been sold by Brownfield for $68,063.50. The purchasers of the lands were brought into the suit, and Pyron asked for an accounting and judgment, establishing his interest in the lands and the proceeds of their sale.

The trial court instructed a verdict for the plaintiff. The appellant contends, not only that this was error, but also that the peremptory instruction should have been in his favor. In order to dispose of these contentions it will be necessary to consider the evidence in its most favorable aspect to each party.

On January 28, 1909, M. V. Brownfield entered into a written contract with one McKinnon, for the purchase of the land for a consideration of $20,000. Five hundred dollars was paid at the time of the execution of this preliminary contract, which provided for payment of an additional $4,500, on delivery of the deed and notes for the remaining $15,000, payable in three years, bearing interest at the rate of 7 per cent. per annum. The sale was later consummated under this contract, and the land conveyed to Brownfield. Prior to the execution of this contract Pyron, acting for himself and Harkrider, had been in negotiation with McKinnon for the purchase of the land. Pyron was engaged in buying and selling land. He was acquainted with these lands, and came to the conclusion that they could be "bought at a bargain." He did not have the $5,000 to make the initial payment, and approached Brownfield for the purpose of borrowing said sum of money. Brownfield did not know anything about the land until his attention was called to it by Pyron and entered into the contract with McKinnon on Pyron's representations, without looking at the land.

Evidence offered by Pyron tends further to show: That when Pyron approached Brownfield he suggested, either that Brownfield lend him the money or go in with him on the purchase. That Brownfield expressed a preference to "go in on the purchase," and requested Pyron to "go ahead and see what could be done." That after some further negotiations with the owner of the land, in which some reduction in the price of the land as first made was secured, "they" agreed to take the land, and it was understood, verbally, that "Brownfield, Harkrider, and Pyron were buying the land together, and that Brownfield should take the deed in his name, as Pyron and Harkrider were getting only a quarter each and Brownfield one-half of the land." That after the execution of the Brownfield-McKinnon contract, but on the same day, and in pursuance to the oral agreement already made, the following instrument was executed by the parties:

"Fort Worth, Texas, Jan. 28, 1909.

"Messrs. R. B. Pyron, Coke W. Harkrider, Fort Worth, Texas—Dear Sirs: Referring to the tract of land, 5944 acres, situated in Gray county, this day purchased through J. F. Wellington, Jr., it is understood that you are to pay me interest on the amount of money paid by me on the deal and you to get one-half of the profits when the land is sold. You are to have the exclusive sale of said land and I will make deeds when called on for any part of the land sold.

"Yours truly, [Signed] M. V. Brownfield.

"We hereby agree to the above.
"[Signed] R. B. Pyron,
"Coke W. Harkrider."

Pyron had several offers to purchase the land and submitted them to Brownfield, who suggested from time to time that they "carry the land," as prices were advancing. The first intimation that Pyron had of a denial by Brownfield of Pyron's interest in the land was in 1915, and he never heard of any claim by Brownfield of a three-year limitation on the contract until in 1917.

Brownfield paid the initial cash payment and the notes as they became due. Pyron did not offer to pay anything on this account or any interest on the amounts paid by Brownfield until the bringing of this suit, and both parties evidently construed the contract as imposing no personal obligation on Pyron and Harkrider to make any such payments. There are in evidence some telegrams from Pyron to Brownfield, sent during the years 1910 and 1911, in which Pyron referred to the lands as "our land"; also a letter written by Brownfield to Pyron, dated January 22, 1912, which reads in part as follows:

"Don't forget the taxes on our land. I am counting on you paying them out of the lease money."

Evidence offered by Brownfield tended to show: That when Pyron called Brownfield's attention to the land Brownfield refused to make a loan, but stated that he might buy

the land himself. That Pyron interested himself in getting the trade through, with the expectation of being employed to resell the land for Brownfield and thus secure a commission. That Brownfield had no agreement to buy the land with Pyron and Harkrider, and no express agreement to list the land with Pyron for resale until after he had closed the trade with McKinnon. That after he executed such contract he told Pyron "that he was going to let him have the sale of the land, and was going to list it with him for sale." That he agreed to give Pyron three years in which to sell the land at $10 per acre and when the land was sold he was to have "his money back and interest on it at 10 per cent., and then the profits were to be divided between him and Pyron." That Pyron represented that he ought to have something in writing to show prospective purchasers, and on Brownfield's acquiescence in the suggestion had prepared the contract already quoted. That when this contract was presented to Brownfield it had already been signed by Harkrider and Pyron. That Pyron represented that he was in a "rush," and Brownfield signed the contract without noticing that the three-year limitation and 10 per cent. interest provision of the verbal agreement had been omitted. That just before the expiration of the three years Brownfield noticed this omission in the contract, and called Pyron's attention to it, whereupon Pyron conceded that such was the understanding, and agreed that he would claim no right after the expiration of such time.

Both parties offered other evidence which tended to corroborate their respective theories as stated above, but we do not think it necessary to refer in detail to such evidence.

On May 15, 1915, Harkrider executed a deed conveying his interest in the land to Pyron, and this deed was placed of record. Brownfield brought this suit on September 26, 1917, and about that time sold the land to the other parties herein for the sum of $68,063.

[1-5] We do not think that either party was entitled to a peremptory instruction. The evidence is sufficient to support the conclusion that the parties engaged in a joint enterprise, the purpose of which was to buy and resell this land for a profit, under an agreement to divide such profits between them equally. Each party furnished and was to furnish something for the venture. Pyron's knowledge of the character and quality of the land, that it was for sale, and his efforts procured the "bargain." In addition to this he was to render further service in the resale of the land in order to realize the profits that were thought to be in the "deal." Brownfield's part was to furnish the necessary money, which on closing of the venture he was to get back, with interest. Under such view, Brownfield took the legal title in

trust for the purpose of carrying out the enterprise, and Pyron had such an interest in the subject-matter of such enterprise as that Brownfield could not revoke the contract and put an end to Pyron's rights. Seymour v. Freer, 8 Wall. 202, 19 L. Ed. 306; Schultz v. Scott (Tex. Civ. App.) 210 S. W. 830; Shaeffer v. Blair, 149 U. S. 248, 13 Sup. Ct. 856, 37 L. Ed. 721; Bonner v. Cross County Rice Co., 113 Ark. 54, 167 S. W. 80. The authorities cited, particularly the first two, are so clearly in point that we omit further discussion of this phase of the question. On the other hand, the evidence, viewed from appellee Brownfield's standpoint, is sufficient to support the theory that Pyron was only employed as a broker to sell the land on commission; that he was to take a share of the profits as compensation for his services as a broker; that he had acquired no interest in the land itself; and that the contract was at an end before the sale by Brownfield. Under such view, Brownfield was entitled to prevail. Taylor v. Burns, 203 U. S. 120, 27 Sup. Ct. 40, 51 L. Ed. 116; Daugherty v. Moon, 59 Tex. 397; Browne v. King (Tex. Sup.) 235 S. W. 522; Bryan v. Ross (Tex. Civ. App.) 214 S. W. 524.

As we have seen, the evidence offered as to what preceded the execution of the memorandum, evidenced by the letter of January 28, 1909, and the circumstances of its writing, is in conflict. The letter within itself does not settle the conflict. It is consistent with the theory of either party, and its character and meaning may be determined from a consideration of the surrounding circumstances; "conversations which attended the negotiations may be looked to for the purpose of showing the nature of the completed transaction." Lemp v. Armengol, 86 Tex. 690, 26 S. W. 941; Pomeroy's Equity Jurisprudence (4th Ed.) par. 1010; R. C. L. vol. 26, p. 1202, pars. 41, 42. An agreement to share in the profits of an enterprise or business does not of itself determine the question as to whether a partnership between the parties is thereby created, but all the other facts and circumstances are to be considered in connection with such agreement to ascertain whether the profits are to be received merely as compensation for services rendered as an agent or as a principal interested in the business. Buzard v. First National Bank, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7; Kelley Co. v. Masterson, 100 Tex. 38, 93 S. W. 427; Fink v. Brown (Tex. Com. App.) 215 S. W. 846; Millers' Indemnity Underwriters v. Patten, 238 S. W. 240, recently decided by this court.

[6, 7] Appellee contends that a trust could not be created by the letter dated January 28, 1909, because it was written after the execution of the contract of purchase between Brownfield and McKinnon, and cites the cases of Gilmore v. Brown (Tex. Civ.

App.) 150 S. W. 964, and Guest v. Guest (Tex. Civ. App.) 208 S. W. 547, to establish this proposition made by him:

"To constitute an express trust an agreement must have existed at the time of the acquisition of the title by the trustee. No agreement thereafter may be available for that purpose."

This decision and a number of others to the same effect does not control the present case for a number of reasons. The quoted statement is only the law in cases where the trust is in parol. A trust may be ingrafted on a legal title by a writing executed at any time. Wallace v. Pruitt, 1 Tex. Civ. App. 231, 20 S. W. 730; Pomeroy's Equity Jurisprudence, 1007; Cyc. vol. 39, p. 54. The verbal agreement for the purchase of the land for the benefit of the joint enterprise was made before the execution of the Brownfield-McKinnon contract, according to Pyron's testimony, and the writing is merely a statement in part of the verbal agreement already made. The purchase of the land and the agreement as to how it was to be handled, as between the parties, were all part of the same transaction, and the writing executed in pursuance to the prior verbal negotiations should be regarded as being executed at the same time with the contract to purchase, though in point of time it was prepared and executed shortly afterwards. We do not even wish to be understood as holding that a verbal express trust might not have been created after the making of the executory contract of purchase between Brownfield and McKinnon and before it was consummated by delivery of deed. In the case of Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381, the trust agreement was made pending the consummation of an executory contract of purchase.

We conclude, therefore, that the case must be reversed and remanded, and will briefly notice some other matters presented by appellants' propositions that may likely arise on another trial.

[8] Appellee sought to have the terms of the letter reformed so as to include certain agreements which he alleges were left out by mutual mistake or by fraud on the one part and mistake on the other, and the question is raised as to limitations against such remedy. The authorities apparently support appellants' contention that the right to reform the instrument would be barred by the four-year statute of limitations. Waters v. East, 23 Tex. Civ. App. 412, 56 S. W. 939; Starnes v. Beitel, 20 Tex. Civ. App. 524, 50 S. W. 202.

[9, 10] Evidence as to an agreement between Brownfield and Pyron, made subsequent to the writing and acceptance of the letter, to the effect that the contract should terminate at the end of three years, was admissible, and we are inclined to think the witness Brownfield could testify in the same connection that such had been the original agreement and had been omitted from the writing since, according to his testimony, this matter was discussed between him and Pyron, and was the reason for the making of the subsequent oral agreement. If the contract was merely a brokerage contract, a question that was undecided and in issue at the time of the admission of this evidence, it could be modified or revoked by a subsequent oral agreement, such as this. If appellant desired that the evidence be considered only conditionally, he should have requested the submission of a proper charge in connection therewith.

[11, 12] Parol testimony, as we have already held, was admissible for the purpose of ascertaining the character and meaning of the instrument and evidence as to the negotiations of the parties such as referred to in the fifth, sixth, tenth, and eleventh propositions, was admissible for this purpose. Evidence as to admissions made by Pyron after the execution of the contract was admissible as tending to contradict his testimony as to the character of the agreement. The contract itself and all the circumstances attending its execution tend to show that it was not intended to be a full expression of the agreement of the parties, and parol evidence would be admissible as to parts of the agreement not intended to be dealt with completely in the writing and not contradictory to its terms. Magnolia Warehouse & Storage Co. v. Davis & Blackwell, 108 Tex. 422, 195 S. W. 184; Swope v. Liberty County Bank, 52 Tex. Civ. App. 281, 113 S. W. 976; Meade v. Rutledge, 11 Tex. 44; Sherman Oil & Cotton Co. v. Dallas Oil & Refining Co. (Tex. Civ. App.) 77 S. W. 961; Jones' Commentaries on Evidence, par. 440. But as the appellee alleged that it was intended that the written contract should provide for the interest which he was to receive on money paid by him, we hardly think that parol evidence as to such matter was admissible if the rule stated was otherwise applicable.

Reversed and remanded.