## Humphreys v. Central Kentucky Natural Gas Company.

(Decided November 30, 1920.)

### Appeal from Montgomery Circuit Court.

1. Gas—Companies Operating Under Franchise from City—Duty of Under Contract.—If a gas company or public service corporation is occupying the streets of a city under a franchise contract its duties and liabilities will be determined by the terms of the contract if the contract contains provisions respecting its duties.

2. Gas—Companies Operating Under Franchise from City—Implied Contract to Supply Gas.—Where a gas company obtained a franchise from a city to use its streets for the purpose of supplying its people with natural gas and the contract between the city and the gas company did not provide how much gas in quantity or pressure should be furnished to customers, the law will imply a contract on its part to exercise reasonable and practicable diligence and care to supply customers with a sufficient quantity and pressure of gas.

3. Gas—Liability of Company to Consumer Under Implied Contract.—Where a gas company is furnishing gas under a franchise from a city and there is no contract with the consumer or the city as to the quantity or pressure to be furnished the consumer may bring a suit against it on the implied contract it was under to perform the services for which it sought and obtained the franchise, and in such action may recover damages for loss suffered through its negligence and failure to fulfill its implied obligation.

4. Gas—Duty and Liability to Consumer Under Implied Contract.—Where a gas company furnishing natural gas for heating purposes under a franchise granted by a city fails to furnish the consumer with the requisite quantity or pressure of gas needed in his home or his business and injury or loss results therefrom the consumer may have an action against the company for damages.

5. Gas—Duty and Liability of Company Under Implied Contract—Notice of Failure to Furnish Gas.—Where a gas company is under an implied duty to furnish gas to a consumer and it fails to fulfill its implied duty the gas company must have notice of the failure or it cannot be made liable in an action brought by the

consumer to recover damages for loss sustained on account of failure.

R. A. CHILES and JOHN G. WINN for appellant.

W. B. WHITE and HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—Reversing.

In 1904, the city of Mount Sterling enacted an ordinance providing for the sale of a natural gas franchise permitting the purchaser to "construct, maintain and operate in the city of Mount Sterling, Ky., and over and along and under the streets and public ways thereof a gas plant for the purpose of providing the said city and its inhabitants, customers and consumers with natural gas to be used for the purpose of giving heat, power, light and fuel to said city, its inhabitants, customers and consumers, at such prices as may be hereafter agreed upon by such customers, consumers, city and its inhabitants." . . . "And the owner of such franchise, right and privilege shall have the right to dig ditches to lay their pipes and mains in the streets of said city, erect all necessary appliances and machinery for the purpose of operating said plant."

Pursuant to this ordinance the franchise was sold to C. C. Chenalt, the predecessor in title of the appellee, the Central Kentucky Natural Gas Company. The franchise contract between the city and Chenalt provided, "that there is let and granted and this ordinance does hereby let and grant to the purchaser of the natural gas franchise herein before referred to, the right, privilege and permission to construct, lay, operate, and maintain through and in the streets, avenues, alleys and public places of the city of Mt. Sterling, Ky., a system of pipes for the conveyance, distribution and sale of natural gas for heating, fuel and manufacturing power purposes for the full term of twenty (20) years from the time this ordinance shall take effect." . . . "Said purchaser of this franchise shall not charge during the life of this ordinance a maximum rate to exceed forty (40) cents per one thousand (1000) cubic feet of gas and said purchaser shall allow a discount of ten (10) per cent. on all gas furnished to the city buildings, public schools, parochial schools, the city hospitals, public libraries and churches from the net rate charged the consumers of gas in said city, using it for heating buildings in similar manner."

It will be observed that this franchise contract does no more than grant to the purchaser the privilege of constructing and maintaining in the city a system of pipes and other appliances for the conveyance and distribution of natural gas to the people of the city and fix a maximum rate that may be charged for the service. It does not prescribe the quantity of gas or the amount of pressure that shall be furnished or fix any liability for a failure, arising from any cause, to furnish the quantity or pressure that may be needed by any consumer or class of consumers.

In short the franchise contract with the city did not by its terms impose any duty on the company in consideration of the privilege granted or oblige it to furnish gas in any quantity to any person.

Shortly after the contract was made, the gas company laid its pipes and mains in the city and commenced to supply the people of the city with gas and was so engaged in 1914-1918. During these years the appellant, Humphreys, was a florist in Mt. Sterling, and kept a large stock of growing plants and cut flowers for sale; the buildings used in the conduct of his business were equipped to be heated by burning natural gas and he was a regular customer of the company receiving natural gas from its pipes for the purpose of heating his green house and appurtenant buildings and paying for it the price charged, and except for the time hereinafter mentioned it did supply him with all the gas needed.

In this suit to recover damages for the loss of plants caused by the failure of the company to furnish an adequate quantity of gas and pressure he alleged that it was necessary to protect his plants in cold weather that there should always be maintained in his buildings a temperature not lower than thirty-six degrees F.; that on or about December 10, 1917, and for the space of ten days the company failed to supply gas either in quantity or pressure that would furnish a temperature as high as thirty-six degrees or any temperature above twenty degrees although he used all the gas that was supplied to him; that he kept his heaters and other apparatus in good order and exercised care and diligence to prevent his plants from being injured by the cold on account of the failure of the gas supply but was unable to do so or to procure other means of heating his buildings, and as a result of the fail-

ure of the needed gas supply his plants and flowers of the value of $710.00 were frozen and rendered worthless.

He further averred that his buildings were so constructed and so equipped with heating apparatus that the required temperature during this period and at all times could have been maintained if the company had furnished the requisite supply of gas.

He further alleged that the nature of his business and the necessity of maintaining a temperature of 36 degrees was known to the company when it accepted him as a customer and at all times thereafter; that he relied on the company to furnish the requisite heat and it had been doing so until the time mentioned, when it failed to do so, and he was unable to procure any other means of heating his buildings; that with knowledge of the quantity of gas and pressure needed and the condition and character of his building it made connection with 'said buildings and the pipes and apparatus therein contained and between them and its main pipes and began and undertook to furnish him sufficient gas and sufficient pressure to maintain such temperature and it therefore became and continued to be its duty so to do; that it failed and refused to comply with its undertaking and wrongfully, unlawfully, carelessly and negligently failed to perform its duty of furnishing the requisite quantity of gas; that the only reason why the temperature fell below 36 degrees was on account of the negligent and careless failure of the company to furnish the necessary gas at proper pressure.

To the petition as amended a general demurrer was sustained and Humphreys appeals.

The franchise contract between the city and the gas company did not, as we have said, oblige the gas company to furnish Humphreys or any person any specified quantity of gas or such quantity as would maintain any degree of temperature. It is also admitted that Humphreys did not have any contract with the company by which it undertook to furnish him any quantity of gas or to maintain any specified temperature or any temperature. Therefore Humphreys, having no special contract, was not able to find in the franchise contract any express condition or provision on which to base his cause of action.

It is, however, insisted in his behalf that when the company obtained the privilege of supplying the city and its inhabitants, including himself, with natural gas for heating purposes and began to do this under its franchise

contract it thereby assumed an implied and enforceable obligation to furnish him the necessary quantity of gas to maintain such temperature as would protect his plants from freezing, in view of the fact, as alleged, that it knew the degree of heat that would be necessary to protect his plants and that he was depending entirely on the heat that could be supplied by the burning gas.

On the other hand, it is contended by counsel for the gas company that its liability in cases like this rests entirely on express contract, and there being no contract requiring it to furnish any specified quantity of gas or pressure or to maintain any specified degree of heat in any building it can not be made liable if it fails to do so. It is further contended that even if it could be held liable on the implied contract asserted, its liability in such a state of case could only arise after notice to it that Humphreys was not receiving the required quantity or pressure of gas, and the failure to aver the giving of such notice was fatal to the petition.

Coming now to consider these respective contentions our opinion is that if there had been an express contract between the city and the company specifying the quantity and pressure of gas that should be furnished to the people of the city, or such a contract between the company and Humphreys the rights and liabilities of the parties would be controlled by the terms and conditions of the contract, and if the company had failed to fulfill the terms of the contract and in consequence thereof Humphreys had suffered the damages complained of, there could be no doubt of his right to recover under the authority of Paducah Lumber Co. v. Paducah Supply Co., 89 Ky. 340; Graves v. Logan, 112 Ky. 775; Lexington Mfg. Co. v. Ots, 119 Ky. 598; Kenton Water Co. v. Glenn, 141 Ky. 529; Tobin v. Frankfort Water Company, 158 Ky. 348.

In these cases it was held that when a water company entered into a contract with the city to construct and operate a system of water works for the purpose of supplying the city and its inhabitants with water and undertook in the contract to equip its plant with specified water fixtures and appliances and to maintain a described quantity and pressure of water it could be held liable at the suit of any inhabitant of the city who suffered loss on account of the failure to comply with the terms of the contract.

It was further held in these cases that the contract with the city was for the use and benefit of the inhabitants as well as the city, and therefore any inhabitant who had sustained damages by a breach of the contract with the city could bring an action against the company in his own name, and there is no place for a distinction between the duty and liability of a water company and a gas company when each is operating under a like franchise contract. In each instance the company is engaged in the performance of a public duty and answerable to any city customer damaged by a breach of it.

It will, however, be observed that in the cases mentioned there was an express contract prescribing the duties of the water companies, while in this case there is no express contract prescribing the quality or quantity of service the gas company should render.

But in the absence of an express contract of the character mentioned, we think the company may be made liable in an action for damages at the instance of any customer who has suffered loss through its negligence or failure to fulfill the obligations impliedly assumed by its solicitation and acceptance of the franchise contract with the city under which it acquired the right to and did use the streets for the purpose of supplying the city and its people with gas for heating purposes.

When a public service corporation such as a gas company obtains the privilege of occupying and using the streets for a particular public service that will be beneficial to the people of the city and there is no express contract between it and the city defining its duties and obligations, the law will raise an implied and enforceable contract to take the place of the omitted express contract and impose on the company the obligation to render the service that was reasonably within the contemplation of the parties when the contract was made.

It is a familiar and well established principle in the law of contracts that when a contract intended to create mutual rights and obligations is entered into and the contract does not specify the duties and obligations intended to be assumed by one of the parties the law will imply a contract on his part to do and perform those things that according to reason and justice he should do to carry out the purpose for which the contract was made, and the nature of such a contract will be gathered from the facts and circumstances surrounding the parties at the time the contract was entered into. Numerous cases

declaring the principle stated will be found in "Words and Phrases" under the head of "Implied Contracts;" in 6 R. C. L., p. 586; 13 Corpus Juris, 640; Chitty on Contracts, vol. 1, p. 15; Elliott on Contracts, vol. 2, sec. 1355.

We are further of the opinion that when the law raises in a case like this an implied contract any inhabitant of the city will have the right to maintain an action in his own name for a breach of it to the same full extent that he might maintain an action for the breach of an express contract. The principle that would give a citizen of the city a cause of action on an express contract is equally applicable to an implied contract. No distinction can be drawn between the duty of the company to perform the obligations put on it by an implied contract and its duties and obligations under an express contract.

There might, however, be a difference in the nature and quality of the duties arising under an express contract and those arising under an implied contract. In the case of an express contract the terms and conditions of the contract itself must be looked to while in the case of an implied contract the conditions to be performed would be only those that in reason and justice the company should perform in carrying out the purposes for which the privilege to it was granted, and these we will presently undertake to define in a general way.

It can not be doubted that when this gas company applied for and was granted the right to use the streets and public ways of the city for the purpose of supplying the people in their homes, factories, offices and places of business with natural gas for heating purposes and began the performance of this service it engaged and undertook to continue the service in such a manner as would reasonably and naturally fulfill the expectations in the minds of the contracting parties when the franchise was granted and accepted, and perform this service in such a manner as was reasonably intended by it and the city when the contract was entered into.

Accordingly we think that when this gas company obtained a franchise from the city to use the streets and public ways for the purpose of supplying the people of the city with natural gas and entered upon the performance of this service it thereby assumed an obligation to exercise reasonable and practical care and diligence, considering all the existing circumstances and conditions, to supply its customers with such quantity and pressure of

gas as their needs, when known to it, might require, and this without discrimination or favor.

The company will not be heard to say that because there was no contract prescribing its duty it may do as it pleases in the performance of the service undertaken by it, and that if it is negligent or careless in the performance of what it has undertaken to do neither the city nor any of its inhabitants will have any actionable complaint against it.

To require a less measure of duty than we have defined would be unjust to the city and its people and enable a gas company to defeat the very purpose that induced the city to grant the privilege of using and occupying its streets for the purpose of furnishing gas for heating purposes. It would also subject to great inconvenience, discomfort and expense the inhabitants of the city, who acting on the reasonable belief that the company would render the contemplated service, had removed other means of providing heat and installed in their homes, factories and places of business the fixtures and appliances necessary to secure heat from the new source of supply.

To secure for itself and its people means of obtaining heat was the only reason why the franchise was granted by the city, and there would be many times a gross failure to render the service contemplated if the gas company might use its own convenience or pleasure. in determining the quality of its service.

We do not of course mean to say that a gas company is under an absolute duty to furnish each or any of its customers the precise quantity of gas or the exact pressure needed by them, because it might not be reasonable or practicable for it to do this without discrimination, but if it knows the needs of a particular customer and the quantity and pressure of gas he requires in his business it should furnish this quantity and pressure if by reasonable and practicable diligence and care under all the existing circumstances and conditions it can do so without discrimination against other customers. Public service corporations can not give to particular customers special favors to the detriment of others. They must treat all customers alike.

The exact character of service that will meet the measure of care and diligence we have laid down can not, of course, be stated with accuracy. It must depend on the facts and circumstances of each case as it comes up. It

is, however, certain that when the failure of a gas company to furnish the needed service is caused by its negligence or carelessness, as the petition charges, it has not exercised the required degree of care and diligence.

The views expressed and the rules laid down in this case as to the duty and liability a public service company is under when there is no express contract with the city or the consumer are not harsh or unreasonable or beyond the ability of the gas company to carry out if it in good faith intends to meet the obligations it assumed when it accepted the franchise.

There is a dearth of authority on the subject of the implied duties of a public service corporation, and this is so because there is usually a contract between such corporation and the city prescribing and defining the things it shall do and the manner in which they shall be done. There are, however, a few cases that support in a general way what we have said.

In Coy v. Indianapolis Gas Company, — Ind. —, 36 L. R. A. 525, the question was whether the gas company should be made to respond in damages to Coy, one of its customers, for its failure to furnish his dwelling house with sufficient heat to keep it comfortably warm during cold weather. In his petition, to which a demurrer was sustained and the petition dismissed, Coy alleged that the company had obtained a franchise from the town in which he lived to furnish the people of the town with gas for heating purposes, and had also entered into a written contract with him to supply sufficient gas to comfortably heat his residence; that it failed to do this, and as a consequence two of his children were made sick and died. Thereupon, he brought suit for damages against the company.

In the course of the opinion the court, after setting out the duty the company owed under its contract with Coy, further said that this agreement

"Did not in any manner absolve appellee from the duty assumed under its franchise, but rather by its terms fixed the character and scope of the duty so assumed. Even without and before the contract, it was the duty of the company to attach its mains to appellant's house pipe, on being requested to do so by him, and on his compliance with the reasonable conditions imposed by the company. Nor would it be enough to make such connections without supplying the gas therefor. Not a partial, but a full,

compliance with the company's duty is required, and this without any discrimination as to persons having a right to the gas. Central U. Teleph. Co. v. Fehring (Ind.), 45 N. E. 64. Whether, particularly after contract entered into to supply the gas, the company might be relieved of the obligation to furnish it, by reason of inability to procure the gas, or for other reason, we need not decide, as no such question appears in the record. That would be a matter of defense, and can not be taken into account in determining the sufficiency of the complaint.".

In Guardian Trust & Deposit Co. v. Fisher, 200 U. S., 57, 50 L. ed. 367, the Supreme Court of the United States, in considering the liability of a water company operating in a city under a franchise to a suit for damages for failing to supply a sufficient quantity of water to extinguish a fire that destroyed the property of a citizen of the city, said in answer to the contention of the water company that independently of its contract with the city it was under no duty to furnish an adequate supply of water to the people of the city, that:

"It is true that a company contracting with a city to construct water works and supply water may fail to commence performance. Its contractual obligations are then with the city only, which may recover damages, but merely for breach of contract. There would be no tort, no negligence, in the total failure on the part of the company. It may be also true that no citizen is a party to such a contract, and has no contractual or other right to recover for the failure of the company to act; but, if the company proceeds under its contract, constructs and operates its plant, it enters upon a public calling. It occupies the streets of the city, acquires rights and privileges peculiar to itself. It invites the citizens, and if they avail themselves of its conveniences, and omit making other personal arrangements for a supply of water, then the company owes a duty to them in discharge of its public calling, and a neglect by it in the discharge of the obligations imposed by its charter, or by contract with the city, may be regarded as a breach of absolute duty and recovery may be had for such neglect. . . . .

"An individual may be under no obligation to do a particular thing, and his failure to act creates no liability; but if he voluntarily attempts to act and do the particular thing he comes under an implied obligation in respect to the manner in which he does it. A surgeon, for

instance, may be under no obligation, in the absence of contract, to assume the treatment of an injured person, but if he does undertake such treatment he assumed likewise the duty of reasonable care in such treatment. The owner of a lot is not bound to build a house or store thereon, but if he does so he comes under an implied obligation to use reasonable care in the work to prevent injury therefrom to others. Holmes, Common Law, p. 278. Even if the water company was under no contract obligations to construct water works in the city or to supply the citizens with water, yet, having undertaken to do so, it comes under an implied obligation to use reasonable care; and if, through its negligence, injury results to an individual, it becomes liable to him for the damages resulting therefrom, and the action to recover is for a tort, and not for a breach of contract.''

The court in these cases also held that the right of action was in tort, not contract, but this is not so material because the principal question is: will an action lie? Our court has ruled in the water cases, *supra,* that the action is for breach of contract, while other courts say that such an action is in tort. But in this case the damages, if any, to which Humphreys is entitled are easily ascertainable, and there can be no objection to proceeding against the company for a breach of its implied contract. If a case should come up in which the damages were not susceptible of reasonable estimation, as, for example, in a suit like the one brought by Coy, an action for tort might be brought.

It is further insisted by the company that the petition is fatally defective in failing to charge that it had notice of the fact that Humphreys was not receiving the quantity and pressure of gas needed. In this behalf the argument is made that it should not, in the absence of such notice, be made liable in damages, because with notice of the conditions at Humphreys' place of business it might have made arrangements to save his plants from injury and loss.

We agree with counsel in the contention that if a customer of a gas company is not receiving at his home or place of business the quantity or pressure of gas that is needed to prevent loss or damage in his home or his place of business, he should give notice to the company of the facts so that it may have opportunity to relieve the trouble, and if he fails to do this, the company can

not be made liable in damages for its failure to furnish a sufficient supply or pressure.

Where hundreds and in many cases thousands of customers are receiving gas in homes, factories and places of business for heating purposes, and the conditions surrounding each place to be heated are different in one or more respects, as is usually the case, it would be very unreasonable to hold the company liable for damages one of them might suffer on account of an inadequate supply or pressure of gas until it had actual notice of the facts. But we do not think an allegation as to notice indispensable to the sufficiency of the petition. It is a matter of defense.

Wherefore the judgment is reversed, with directions to overrule the demurrer to the petition as amended and for proceedings not inconsistent with this opinion.