Potts' Adm'r v. Commonwealth ex rel. Reeves.

Crews et al. v. Commonwealth ex rel. Reeves.

May 12, 1950.

Elvis J. Stahr, Judge.

846

M. C. Anderson, and John K. MacDonald, Jr. for appellants.

JUDGE LATIMER—Affirming.

Pursuant to agreement, the intervening appeal of Belle Crews is consolidated with the case of Charlie Potts' Administrator and heard on the same record. Consequently they will be disposed of in one opinion.

The court below adjudged that a paper offered for probate, purporting to be the last will and testament of Charlie Potts, had not been properly executed. It further adjudged that Charlie Potts died intestate and without heirs. W. L. Trimble, Administrator with the will annexed of Charlie Potts, and Belle Crews, the divorced wife of the deceased Potts, appeal.

The Commonwealth, to which the estate will go by escheat, has cross-appealed on the grounds that demurrers were wrongfully sustained to paragraphs 1 and 2 of its petition as amended. Paragraph 1 alleged that the property settlement between Belle Crews and Charlie Potts, and their subsequent divorce, was a revocation by implication of the purported will. Paragraph 2 alleged that the remarriage of Belle Crews revoked her part of the reciprocal will and thereby the whole instrument.

We will first consider the question raised on the direct appeal, which goes to the question of whether or not the purported will was properly executed. A conclusion that the court properly adjudged as to that mat-

ter would obviate a consideration of the questions raised on the cross-appeal.

The purported will contains this stereotyped attestation clause:

"We, the undersigned, were this day called to witness the above writing, which both Charlie Potts and his wife Belle Potts declared to us was their last will and testament, and which they requested us to sign as witnesses which we did in their presence and in the presence of each other, and which they signed in our presence.

"This the 11th day of September, 1939.

"Ben B. Morris
"Varlien Perkins."

The question presented is whether or not this will was signed as stated in the attestation clause above. The testimony is conflicting. At the outset Belle Crews said she was uncertain as to how the events happened. However, after a period of time she was able to recall and then testified that she saw Charlie Potts sign the will in her presence and in the presence of the two witnesses, and that they signed and she signed in Charlie Potts' presence. On the other hand, we have the testimony of Judge Morris, the scrivener and also witness, who it appears had originally been employed by Belle Crews to bring this action, but who later had been discharged. Effort is made to show that Judge Morris was employed on a contingent fee basis to handle the case and that he had entered into some sort of contract with Mrs. Opal Sullivan, a sister of Varlien Perkins, which occasioned the disagreement and his discharge. It is insisted, therefore, that because of the above Judge Morris was disappointed and somewhat incensed, and, consequently, his testimony could have little weight, especially so in view of the fact that this attesting witness contradicts the explicit statements of the attestation clause. At any rate, in testifying relative to the execution of the will, Judge Morris said: "I will get to the point then. After I found out what he wanted I dictated to my secretary, Miss Perkins, this writing, of which I have an office copy. Charlie Potts after hearing the dictating said this: 'It is near the noon hour and nearly dinner time and Belle and I can't both leave the restaurant at the same time, and

while you are preparing it I will go down and send her up here and get the will.' I advised Charlie both of them would have to be there and as he was walking out the door I said 'Charlie, you will have to come back and sign it.' He answered by saying 'All right, but it makes no difference in our case.' And by that time he was at the door. This will had already been drafted, already been dictated and was in process of being drafted on the typewriter and as is our custom when the will is in the typewriter the certificate is put on at that time, and although the certificate reads that he signed it in our presence because the certificate was put on the back of the will before the will was signed by anybody, Charlie went on down the steps and I imagine in ten or fifteen minutes Belle came up. His place of business was just two doors west of my office. Belle came up and by that time the will was drafted and Belle signed it. When Belle signed it Miss Perkins and I as was our wont signed it as witnesses. Belle picked the will up then, and says, 'I will take it down to Charlie.' I says 'Belle Charlie will have to come up and sign that will before us. She says, 'I will tell him.' Belle took the will with her as she went and I didn't see that will any more until Belle brought it to me after Charlie's death. I had supposed he had abandoned his will. I didn't know. That is what happened."

His secretary, Miss Perkins, when asked whether the attestation was true or false stated that it was true with but one exception. She testified no further as to what that exception was.

The matter was heard before the Judge without the intervention of jury. After the proponents had given their evidence and closed, the contestant, Commonwealth of Kentucky, without giving any testimony also closed. It appears that the chancellor then indicated that he would uphold the will, but on motion of the Commonwealth the case was reopened on the ground of newly discovered evidence. The evidence offered then by the Commonwealth was the testimony of Judge Carter, the County Judge, before whom the will was offered for probate. It appears that Belle Crews had talked with the Judge relative to the probating of the will. The Judge testified: "We went on and talked, I don't remember just what all we said; anyway I remember this. I said 'Belle it will be my duty to ask you when this will is probated

whether you and Charlie signed in the presence of one another and in the presence of the witnesses and they signed in your presence.' Belle said 'Well I don't believe I could do that. My recollection is that I went up and signed and one of us had to stay on watch, one of us went up and signed while the other *staid* on watch, then the other went up and signed.' I don't remember which one she said went first but anyway that is the words she told me, that one *staid* on watch while the other went up and signed and the other *staid* on watch while the other went and signed."

After hearing this testimony, the court then entered the judgment as above.

Since the matter was heard by the court without the intervention of a jury, the matter resolves itself into the question of whether or not there is sufficient evidence of probative value to support the chancellor's finding. Questions of fact when heard by a chancellor without the intervention of a jury will be treated in the same manner as if tried before a jury. Obviously, on the basis of the conflicting evidence herein, the court could have justifiably and easily decided as it did. Consequently, the judgment must be affirmed.

As stated above, this conclusion obviates a consideration of the questions raised on cross-appeal.

The judgment is affirmed.