**ELINE REALTY CO. v. FOEMAN.**

Court of Appeals of Kentucky.

Sept. 26, 1952.

Rehearing Denied Nov. 21, 1952.

Wilbur Fields, Louisville, for appellant.

Marshall P. Eldred, Brown, Greenebaum & Eldred, Louisville, for appellee.

WADDILL, Commissioner.

The Eline Realty Company instituted this declaratory judgment action against Roy H. Foeman seeking to have the court determine their respective rights under a written contract. Judgment was entered in favor of Foeman in the sum of $38,689.14. The Eline Realty Company has appealed and Foeman has cross-appealed.

On January 2, 1946, A. J. Eline and Pearl Ruth Hartman, partners doing business as Eline Realty Company, entered into a written contract with Roy H. Foeman, the pertinent part reading as follows:

"Whereby party of the second part, Roy H. Foeman, agrees to give his entire time to the Eline Realty Company as Sales Manager, in listing and selling Real Estate of all kinds; also acting as superintendent of construction in building houses and developing subdivisions. As compensation for this service party of the second part is to receive one-half of the regular real estate commission prescribed by the Louisville Real Estate Board on all sales after all expenses connected therewith, such as advertising, salaries and commissions to outsiders have been deducted. Party of the second part is also to receive one-half of all profits made in the building of houses, and buying of any property for speculative purposes.

"An accounting and settlement shall be made every six months and all profits shall be divided according to this contract.

"It is further agreed, by both parties, that either party has the privilege of purchasing any real estate in their own name, if they so desire without any objection to the other party.

"This contract is to continue and remain in full force until either party notifies the other, by giving thirty days notice, in writing, that he wishes to terminate this contract, at which time full settlement shall be made and this agreement shall become null and void."

· Pursuant to this contract, Foeman listed and sold real estate; he obtained tracts of land and acted as superintendent of construction in the building of houses and in the development of subdivisions. After the contract had been in effect a little over two years, a dispute arose between the parties as to the amount of compensation due Foeman which resulted in the cancellation of the contract. This action was then filed.

The circuit court construed the contract as a joint venture in the buying of real estate for speculative purposes and in the building of houses. Under this construction, the court awarded Foeman one-half of the commissions which were earned, one-half of the profits on houses and lots sold, and one-half of the enhanced value of the property bought or developed.

■■■ To create the relationship of a joint venture, there must exist a common undertaking in which there is a combination of money, efforts, skill or knowledge, a joint control between the parties in the undertaking, and a sharing of profits or losses derived from the enterprise. Burbank v. Sinclair Prairie Oil Co., 304 Ky. 833, 202 S.W.2d 420; Central Trust Company of Owensboro v. Creel, 184 Ky. 114, 211 S.W. 421. The contract in the instant case provided for all the requisites cited above as necessary to the relationship with the exception of a provision regarding losses. Concerning the necessity of an agreement to pay losses in creating a joint adventure, 48 C.J.S., Joint Adventures, § 2, page 811, reads:

"As a general rule, in order to constitute a joint adventure it is necessary that the parties agree to share losses (see cited cases), and an important test in determining whether or not a joint adventure exists is whether or not there is an agreement to share in losses. The absence of an express agreement to share in losses, however, is not material, since such an agreement may be implied from an agreement to share profits, * * *."

In Tidewater Construction Co. v. Monroe County, 107 Fla. 648, 146 So. 209, 211, the court stated:

"* * * the question of whether the parties to a particular contract have created between themselves the relationship of joint adventurers is dependent upon their intentions, which is to be determined in accordance with the ordinary rules covering the interpretation of contracts; that joint adventurers are entitled to share in the profits, and must also share the losses, if any; that a joint adventure is very similar to a partnership, the chief distinction being that a joint adventure is usually limited to a single transaction; that although there may not be any express agreement that the parties shall share in the losses, if any, this must have been implied from the agreement made, and the circumstances surrounding its execution, as having been within the contemplation and intention of the parties."

The contract in this case contains no express provision that the parties were to share the losses. It also appears that under the circumstances surrounding its execution that such was not the intention of the parties. One of the principal reasons for this contract being entered into was to effectuate the development of a subdivision. To accomplish this, it was necessary to expend large sums of money which necessarily would involve the risk of substantial losses. From the testimony introduced, it appears that Foeman would have been financially unable to share a substantial loss. When this is considered the inference must be drawn that the parties did not intend for Foeman to share the losses.

■■ The chancellor, therefore, erred in construing the contract to create a joint adventure when an essential element to that relationship was lacking. It is then incumbent upon this Court to construe the contract correctly.

The rights of the parties under the contract are dependent upon the construction

of the word "profits." The term "profits," standing alone in the contract is susceptible of two interpretations: (1) either as meaning an increase in the capital investment under which interpretation the enhanced value of property would be taken into account, or (2) the term being confined solely to realized gain upon sale of the property which would be the excess of the selling price over the expenditures.

■ In construing this contract, the interpretation should be given it which effectuates the intention of the parties. McHargue v. Conrad, 312 Ky. 434, 227 S.W. 2d 977. This intention is to be ascertained from the language employed in the entire contract. Puckett v. Hatcher, 307 Ky. 160, 209 S.W.2d 742. From the language used in the contract, the intention of the parties appears to be that "profits" was limited to mean the net gain that is realized upon a sale of the real estate.

The term "profits," first employed in the sentence stating that "party of the second part is also to receive one-half of all profits made in the building of houses and buying of any property for speculative purposes," might be considered as falling under either of the two interpretations stated above. This quoted sentence, however, is followed by a paragraph in the contract which again uses the word "profits," but in a sense resolving the ambiguity of the term. This paragraph reads as follows:

"An accounting and settlement shall be made every six months and all profits shall be divided according to this contract."

Considering the implications contained in this paragraph, it is clear that the parties must have intended "profits" to mean only realized gain. Only by this interpretation of the term is there any practical method of dividing the "profits" every six months. If the word "profits" be interpreted to mean any increase in the capital investment, it would be necessary for the parties to evaluate the property every six months and then to divide any increase in its value. It is unlikely that the parties would have intended such an unwieldy and impracticable mode of settlement.

■ As the parties must have intended profits to mean realized gain, the chancellor erred in awarding Foeman one-half of the enhanced value of the property bought or developed. The circuit court should have declared Foeman to be entitled only to one-half of the commissions which he earned and to one-half of the realized "profits" on houses and lots which were sold.

■ There also appears to be some evidence in this case that Foeman could have sold some additional property before the contract was terminated but was prevented from consummating the sale because he was unable to obtain Eline's approval. There is no express provision in the contract which obligated Eline to consent to any sale. In the absence of express specifications of duties and obligations intended to be assumed by the parties to the contract, the law will imply an agreement to do and perform those things which, according to reason and justice, the parties should do in order to carry out the purpose for which the contract was made. Humphreys v. Central Kentucky Natural Gas Co., 190 Ky. 733, 229 S.W. 117, 21 A.L.R. 664; Warfield Natural Gas Co. v. Allen, 248 Ky. 646, 59 S.W.2d 534, 91 A. L.R. 890. The law also implies an agreement that neither party shall do anything which will destroy or injure the other party's right to receive the fruits of the contract. Kirke La Shelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 188 N.E. 163; 17 C.J.S., Contracts, § 328, page 779. Eline was then under a duty to act in good faith toward Foeman when Foeman had a prospective sale.

The evidence in the record is meager on the point of how much property Foeman was prevented from selling because of a lack of good faith on Eline's part. The circuit court should, therefore, allow further evidence on this point. If such evidence be introduced and Eline's lack of good faith be proved regarding prospective sales, Foeman should be awarded one-half of the profits which would have been realized had the sale been consummated.

■ Both parties to this appeal take exceptions to various findings of fact which

the chancellor made as to the amount awardable to Foeman on various sales. An examination of the record reveals that there was sufficient evidence on which the chancellor based these findings of fact and they will not be disturbed. Potts' Adm'r v. Com. ex rel. Reeves, 312 Ky. 845, 229 S.W.2d 990; Combs v. Turner, 304 Ky. 179, 200 S.W.2d 288.

Foeman insists that the court erred in not allowing his claim for rents which were received from the property. Under the terms of the contract it appears that Foeman had a valid claim for his portion of the rent, less expenses, which was due prior to the termination of the contract. Since the record is not clear as to how much rent is in controversy, the circuit court should allow further evidence to be introduced on this point and make its award based thereon.

It is contended by Eline that Foeman is barred from recovery in this suit by the doctrine of unclean hands. Eline submits that the contract was entered into for the purpose of illegal tax evasion. There is nothing expressed in the contract itself to show that it was made for the purpose of evading taxes. It appears, however, that after this contract was entered into Eline transferred to Foeman a tract of land which he owned prior to the execution of the contract. Eline had an opportunity to sell part of this tract for a sizeable profit. Since Eline was in a high income bracket, he transferred the property to Foeman, who was in a low income bracket, so that the profit on the sale could be entered as Foeman's profit and thereby evade paying higher taxes. Foeman's tax on the sale was $5,500 which was paid by Eline. On advice of Eline's accountant, amended tax returns were later filed by Eline and Foeman so that their returns would correctly and lawfully manifest their profits. Analyzing the written contract, it is clear that this tax transaction was a separate transaction not within the purview of the contract. There is nothing in the contract to indicate that Eline would transfer property which he owned to Foeman for any purpose. The transaction with respect to which there was misconduct must be connected with the matter in litigation in order for the doctrine of unclean hands to apply. Columbia Gas & Electric Corporation v. United States, 6 Cir., 151 F.2d 461; Rudd v. Kittinger, 309 Ky. 315, 217 S.W.2d 651. As this suit is upon contract and the tax evasion transaction is not an action connected with the contract, the doctrine is inapplicable.

It is contended by Foeman that the circuit court erred in allowing Eline a credit of $5,500 on the sum awarded under the contract. This $5,500 is the sum referred to above which Eline advanced to Foeman to pay income taxes on the transaction which involved tax evasion. As shown above, this transaction was a separate transaction from the contract which the parties seek to have construed in this case. For Eline to be entitled to equitable relief on this transaction, he must not have been guilty of unlawful or inequitable conduct in the matter with relation to which he seeks relief. 30 C.J.S., Equity, § 93, page 476. Eline admits the transaction was an attempt to defraud the Federal Government of income taxes due from Eline, but alleges that Foeman induced him to enter the transaction. Even if it were true that Foeman induced Eline to defraud the government, Eline cannot be absolved of blame for the moral turpitude involved in the transaction. In all cases involving moral delinquency or turpitude, all parties participating are deemed to be in pari delicto. Stacy v. Williams, 253 Ky. 353, 69 S.W.2d 697; Middlesboro Home Telephone Co., v. Louisville & N. R. Co., 214 Ky. 822, 284 S.W. 104. Equity will not relieve one party against another where both are in pari delicto. Pursifull v. Interstate Oil & Gas Corp., 293 Ky. 152, 168 S.W.2d 363. As this tax evasion transaction involved unclean hands on the part of the party seeking relief, the circuit court should have refused to grant him relief thereon. Therefore, the $5,500 which the court credited to Eline should not have been allowed.

The judgment is reversed on direct appeal and upon cross-appeal, and is remand-

ed to the circuit court with directions to allow the introduction of additional evidence and for proceedings consistent with this opinion.